Case number 21-5373, USA v. Quinn Turner. Oral argument, 15 minutes per side. Mr. Jagger for the appellant. Good morning. May it please the court, my name is Steve Jagger and I represent Quinn Turner. I ask the court to reserve two minutes for rebuttal. You may, you may proceed. Mr. his 300-month sentence for the following reason. First, the district court incorrectly denied his motion to suppress the evidence seized from the automobile he was driving and from his person on October 3rd, 2018. Second, Turner's conviction and sentence for conspiring with others is based on insufficient evidence. Turning to the first issue, the district court erroneously denied Turner's motion to suppress. An arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. The district court decided that, quote, Turner's presence in the car with West at the time and location of the arranged drug deal created probable cause to arrest him as well, end quote. To assess probable cause, the district court in this case looked to first the events leading up to the arrest and then, second, decided whether the historical facts viewed objectively by a reasonable police officer amounted to probable cause. The court's assessment of these two situations was incorrect. The court also overlooked a third prong of Pringle that requires the officer to look at, quote, belief of guilt particularized with respect to the person to be searched or seized, end quote. That means at the time of the arrest, the officers had to have a particularized belief that Turner was guilty of committing a crime. The historical facts and events leading up to the arrest in this case did not support such a belief here. The court analogizes this case to the United States versus Romero decision in 2006, but there are important differences between these two cases. In Romero, there was a hotel room that was reserved in Santiago's name. The drugs were in plain sight. There was a prior relationship between Romero and Santiago. The court found that the hotel room was an unlikely place to admit an innocent person and Santiago acted suspiciously when interviewed by officers. Here, Mr. Turner was in an automobile that was not in his name, not owned by him. The drugs were locked away and hidden in the glove compartment. There was no evidence of a prior relationship between Turner and West, one of the charged co-conspirators. I'm sorry? No evidence? Of a prior relationship prior to the October 3, 2018. Are you basing this because the officers didn't actually know your client's identity? We should just overlook the fact that West, who was working with the CI, was going to be part of this drug deal, kept talking, described the car, said her dude was going to be driving it, and that he wanted to be there to make sure there wasn't any funny business and he was going to get $5,200. Why isn't that evidence of a relationship? Well, first of all, there's no evidence that my dude references Turner. It's a permissible inference from what happened, correct? That's what the district court finds is that the officer's interpretation that my dude is referencing Turner as her supplier was a reasonable inference. But if you look throughout the record, on different occasions, West references Turner to my dude on one occasion, but also references to Turner himself that my dude is here, and she's referencing someone named Kyle. On September 10th, West also references one of her other suppliers, Ghost, as, quote, my dude who's on house arrest. And this was prior to her even... permissible inference that on the occasion involved in this case, at least, my dude referred to Mr. Turner. But there was no prior knowledge that Turner was in any way connected to West at the time of the arrest. Prior knowledge on whose part? The officer's, at the time of the arrest. They didn't know who Turner was, they ordered him out of the vehicle, they detained him immediately. So it is your position that neither the references by West to my dude or the circumstances of the arrest, what transpired, what the officers saw and observed, none of that leads to a reasonable inference that your client, Turner, had the role in this transaction that the officers concluded he did? At the time of the arrest, yes, that's my position. Because if you look at what the Supreme Court found in United States v. DeRay, which I believe is the better precedent in this case, the Supreme Court directed that it is, quote, not convinced that a person by mere presence in a suspected car loses immunity from search of his person to which he would otherwise be entitled. Isn't the operable word there mere? Yes, but at the time of the arrest, that's all that the officers had was his presence. So you're saying that the officers couldn't look at any of those phone conversations that, they certainly had all of those phone conversations, they couldn't look at West, who was working with the CI, I mean, she didn't know it was a CI, but she was, they couldn't look at the fact that she described what the car was going to look like, she described where they were going to do this drug deal, she said specifically that they were going to be there, that he, I know she didn't give a name, but he was going to pick her up and he wanted to be there in order to make sure there was no funny business and they can't look at any of that? I think they can look at those calls, surely, but all those calls do is implicate West, they don't implicate Turner in any form. Well, they indicate somebody of the male persuasion is going to be driving the car and that car will be involved in this transaction, that he knows about it because he wants to be sure there isn't any funny business going down. I mean, it seems like you're saying that unless they know his actual identity and have a complete history on him, they can't draw any of these inferences. Well, I'm saying that all they have at that time is his presence. So they have certainly information about West and the CI and the transaction and the car that was also not owned by Turner, but at that particular point in time, they have no particularized information about Turner himself. All the way up until the morning of the actual transaction, West testified that it was going to be a different supplier, Profit, who was actually going to be attending with her and providing the drugs. That morning, she text messaged Turner and said, hey, are you busy? What are you doing? And he was actually at the hospital having a child delivered that day or released from the hospital that day. So I certainly don't think that his presence in the vehicle is enough to provide the officers an inference that he was the actual supplier of the narcotics in the car. Well, you know, actually, it seems to me that your argument on the suppression motion really turns out to be the same argument that was made to the jury. I mean, there's really no distinction. I mean, whether it's the evidence should have been suppressed or the jury should find him not guilty, it's the same argument. It isn't enough, right? It is partly a sufficiency argument. It's just not enough to implicate Turner himself based on what they had. And I do think the legal argument that they should have followed the case of DeRay instead of Romero does have some legal implication because DeRay clearly found that a similar situation where DeRay was present with exchanging some sort of counterfeit currency, I believe, was not implicated through the facts enough to be held responsible with the co-defendant Petita, I think was his name. And of course, basically overturned his conviction based on the lack of evidence there. I do want to turn to the conspiracy as well, which is obviously a closely related argument. I think, before I do that, one of the other points worth mentioning is they ordered Turner and all occupants out of the car immediately. If the inference is strong enough or so strong as the government wants us to believe and the officers say it was, why couldn't they at that point in time have sought a warrant for all other purposes? They had ordered the occupant's person, nothing was found. They did a cursory search of the car, nothing was found. So why couldn't they at that point in time, with these strong inferences, gone to a judge and said, give me a warrant to do a further search of the car? They didn't. Instead they brought in the canine, they went into Turner's pocket, took the key, and opened the glove box. So I think, on some level, if that inference is so strong, then the officers should have stopped the search, gone and gotten the warrant, and then completed what they were trying to do at that point in time. Turning to the conspiracy, briefly, the argument that we presented is that there was insufficient evidence to convict Turner of the conspiracy. All of the evidence at trial and in the record reflects that there may have been a conspiracy in the Western District of Kentucky between Doherty and Turner. This seems to indicate more of a single act or a single transaction in Northern Kentucky and Boone County, rather than part of that overall conspiracy. Doherty testified that she had never been to Northern Kentucky, she wasn't aware of any part of the conspiracy taking place in Northern Kentucky, so clearly she wasn't aware of any part of the conspiracy to Northern Kentucky, whereas everything reflects that West was the authority in the Northern Kentucky transaction, she was the one with the contact with the CI, she had set up the parameters of the deal, the amount of the drugs, the original price to be, that it was to be sold for, and the time and place that it was going to be transacted. She was the one that reached out to Turner, it wasn't Turner who reached out to her to set that transaction up. She said she was going to give him an awful lot of the money. She did indicate that she was going to pay him an awful lot of the money, but I don't think that the money alone indicates that there was a conspiracy, rather than just a single act where perhaps the two of them could have transpired to sell this one pound in Kentucky. I think that the money element alone is enough to tie her to the Western Kentucky conspiracy, which ultimately impacted Mr. Turner's sentence by increasing the drug amount and then also having the enhancement for being a manager of the conspiracy applied to his sentence. And with that I will reserve my time for rebuttal. Thank you. Okay, thank you counsel. Good morning your honors, and may it please the court, Josh Handel for the United States. In a series of phone calls monitored by the police, Laura West told a government informant that she would deliver a pound of methamphetamine to a Dollar General parking lot while accompanied by her dude who wanted to oversee the transaction. When Ms. West arrived to the appointed place at the appointed time in the company of exactly one dude, Mr. Turner, officers reasonably and it turns out correctly concluded that the two of them had arrived for the appointed purpose, delivering methamphetamine. So whether evaluated under the automobile exception or as a search incident to arrest, the search of the glove compartment that turned up a firearm was permissible under the fourth amendment. Turning first to the automobile exception, that exception permitted entry to the Nissan because officers had probable cause to believe that the vehicle contained evidence of a crime, specifically the crime of methamphetamine trafficking. Now I don't believe Mr. Turner has disputed on appeal that there was in fact cause to believe that the vehicle contained evidence of meth trafficking. Certainly the controlled phone calls leading up to the interdiction provided ample probable cause supporting the officer's determination that the vehicle contained drugs. And under this court's case law, which we discuss on page 26 of our brief, an automobile search permissible under one of the exceptions to the warrant requirement may extend to any container within the vehicle that could contain relevant evidence, notably including a locked glove box. So it's our contention that the automobile exception is adequate entirely on its own to justify the search of the Nissan. But the search was also independently permissible as a search incident to the valid arrests of both Ms. West and Mr. Turner. A permissible search incident to arrest requires two levels of suspicion. Number one, probable cause sufficient to support the arrest, and number two, reasonable suspicion that the search will turn up evidence of the crime of arrest. Here I don't think there's really any real dispute as to the its glove compartment were reasonably likely to contain evidence of methamphetamine trafficking. So the only question controverted on appeal is whether these arrests, and specifically Mr. Turner's arrest, was adequately supported by probable cause. And our contention is that the content of the police monitored phone calls between Laura West and the government informant provided ample probable cause as to both Ms. West's and Mr. Turner's involvement in this methamphetamine transaction. As I believe members of the panel were commenting when my friend was at the lectern, Ms. West told the informant, quote, my dude doesn't want to be, doesn't want there to be any funny business or any numbers exchanged, but he just wants to be there. Officer Janssen testified at the suppression hearing that he and his fellow officers understood those remarks as indicating that Ms. West's supplier wanted to be present to monitor the transaction and essentially protect his product. And Ms. West herself confirmed that interpretation during her testimony at trial when she said she understood the statement, quote, he just wants to be where it is, to mean that Turner didn't want to let the drugs out of his sight. So the officers knew with a high degree of certainty that this vehicle is carrying methamphetamine and arriving for the purpose of selling it. They knew with a high degree of certainty that Laura West has said that her dude wants to be present at that transaction and they then see her show up in the presence of exactly one dude who also happens to have the only key to the locked glove compartment where the meth is ultimately recovered. Considering the evidence in the light most favorable to the government as this court must do when reviewing the district court suppression rulings, there's no basis to find clear error and reverse the suppression, excuse me, reverse the order denying suppression here. Turning very briefly to sufficiency and the conspiracy issues, there's no reason to override the jury's determination that Mr. Turner conspired to distribute methamphetamine. Both Laura West and Ashley Dougherty agreed to distribute meth that Mr. Turner had supplied them. Both Laura West and Ashley Dougherty understood that they were among multiple mid-level dealers that Mr. Turner used to distribute his methamphetamine. And both Laura West and Ashley Dougherty were specifically aware of one another because at one point Mr. Turner used Ashley Dougherty to deliver product to Laura West for distribution to end users. And I just want to pull out one piece of testimony, one statement from the record. This is record number 293 at page 2068 where Ashley Dougherty is on the witness stand and she testifies, quote, he wanted me to take her a quarter of an ounce of meth to sell, end quote. The he in that sentence is Mr. Turner. The her in that sentence is Laura West. This shows that Ashley Dougherty agreed to move Mr. Turner's product. It shows that Laura West agreed to move Mr. Turner's product. And it shows that Ashley Dougherty and Laura West were aware of each other and agreed to move product from Mr. Turner to Ashley Dougherty to Laura West to the end consumers. So that is ample support, especially under the sufficiency standard. If the court has any further questions about sufficiency or sentencing or anything else, I'm happy to answer them. I have a question which is really none of my business, but I'm going to ask it anyway out of curiosity. What's main justice's interest in this that you're here arguing this case as opposed to somebody from the U.S. Attorney's Office in Kentucky, Eastern Kentucky, I guess? Sure. Your Honor, I believe the U.S. Attorney's Office had personnel constraints on this case. The trial attorneys who handled the proceedings in the district court were unavailable. And I'm from Michigan originally and I'm always happy to get back to my home circuit. Okay, well, I just couldn't resist. I'm sorry. Sure. Unless the court has further questions, I'll rest on my brief and respectfully request that you affirm the judgment below. Thank you. Thank you, counsel. May it please the court, just briefly, it's our position that the single transaction between Doherty and West that occurred in the Western District and Louisville is not sufficient to tie the two to a broader conspiracy that extended to the Eastern District as well. All that was from the record appears to be that a one-time delivery between Doherty and West that occurred briefly, there was no other discussions of end consumers, there was no any type of expiracy extending up into Northern Kentucky or Boone County. And with that, unless the court has any other questions, I will cede the balance of my time and ask that the court vacate Mr. Turner's conviction and sentence. Thank you. Thank you, Mr. Yeager, Mr. Handel. We appreciate your briefing and your arguments today. Mr. Yeager, I hope I'm pronouncing your name correctly. We thank you for taking the case under the Criminal Justice Act. Again, as I mentioned earlier, it serves to your client no doubt and to the court system at large. The case will be submitted. That completes our oral argument calendar for the day, so the clerk may adjourn court.